Electronically Filed - St Louis County - August 01, 2018 - 01:29 AM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | |
|---|---|
| SAMUEL R. PITLYK, individually, ) <br> and on behalf of all others similarly ) <br> situated, ) <br> ) <br>     Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> THE NATIONAL RIGHT TO WORK ) <br> COMMITTEE, a Virginia nonprofit ) <br> Corporation, ) <br> ) <br> Serve registered agent: ) <br> Gregory W. Mourad ) <br> 8001 Braddock Road, Ste. 500 ) <br> Springfield, VA 22160 ) <br> ) <br>     Defendant. ) | Case No.: <br><br> Div. <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION PETITION

COMES NOW Plaintiff Samuel R. Pitlyk ("Pitlyk"), individually, and on behalf of all others similarly situated for his Petition against Defendant The National Right to Work Committee ("NRWC") states:

### Parties, Jurisdiction and Venue

1. Pitlyk is a natural person who, at all times material to this petition, resided in St. Louis County, Missouri.

2. Pitlyk brings this action on behalf of himself and all others similarly situated.

3. NRWC is a nonprofit corporation organized under the laws of the Commonwealth of Virginia, and operating under Section 501(c)(4) of the Internal Revenue Code.

4. NRWC's headquarters are located in Fairfax County Virginia.

5. NRWC conducts substantial marketing and political activity in the State of Missouri.

6. This Court has personal jurisdiction over NRWC because it has solicited business in the State of Missouri, conducts business in the State of Missouri, has directed telephone marketing to Missouri residents and Missouri cellular phone numbers, has committed the acts described below in the State of Missouri and otherwise has sufficient minimum contacts with the State of Missouri.

7. Venue is proper in this Court because a substantial portion of the events giving rise to the claims asserted in this Petition occurred in St. Louis County, Missouri.

**Background and Facts Common to All Counts**

8. NRWC describes it activities and purpose as follows:

"THE COMMITTEE CONDUCTS AN EDUCATIONAL-LOBBYING PROGRAM ON A STATE AND NATIONAL LEVEL TO OPPOSE COMPULSORY UNIONISM AMOUNG [SIC] OTHER OBJECTIVES, THE COMMITTEE STRIVES TO PROTECT THE EXISTING 26 STATE RIGHT TO WORK LAWS AND THE FEDERAL EMPLOYEES' RIGHT TO WORK LAW, AS WELL AS TO ENCOURAGE OTHER STATES AND THE FEDERAL GOVERNMENT TO ADOPT RIGHT TO WORK LAWS PROTECTING ALL WORKERS AFFECTED BY THE COMPULSORY UNIONISM ITS ULTIMATE GOAL IS TO ELIMINAT COMPULSORY UNIONISM"[1]

---

[1] 2016 Form 990, Part III, Line 4a

2

9. The NRWC consistently generates annual revenue in well in excess of $10,000,000.00, which it spends on lobbying efforts and campaigns. This includes opposing forced membership in labor organizations (unions) and forced payment of union dues.

10. The August 7, 2018, primary election ballot in the State of Missouri will include as a proposition Senate Bill 19 with a ballot title of "Proposition A" and more commonly known as Missouri "Right to Work Law". The passage of this bill will prohibit, as a condition of employment, forced membership in a labor organization (union) or forced payments of dues or fees, in full or pro-rata, to a union. The NRWC supports Proposition A and actively promotes the passage of the proposition to Missouri voters.

11. As part of its efforts to gain voter support for the passage of Proposition A, the NRWC recently made hundreds or thousands of illegal pre-recorded phone calls to the cellular phones of Missouri residents.

12. Specifically, and for example, the NRWC delivered to Pitlyk's cellular phone a pre-recorded phone call from NRWC President Mark A. Mix, on behalf of NRWC, imploring the recipient to support Proposition A. This call was made to Pitlyk on July 31, 2018.

13. The same, or substantially similar, prerecorded call was made to many other individuals.

14. NRWC markets itself and its political causes, in part, through prerecorded telephone advertising.

15. Pitlyk is the owner of a cellular phone and pays the bill for his cellular phone account. His cell phone number is 314-xxx-xxx2.

16. Pitlyk did not provide NRWC prior express written consent to call his cellular phone. As used herein, the term "prior express written consent" means an agreement signed by the recipient containing a clear and conspicuous disclosure informing the recipient that he/she will receive cellular phone advertisements from NRWC from an automatic telephone dialing system and informing him that he is not required to sign such an agreement or agree to enter such an agreement as a condition of purchasing any property or goods.

17. Pitlyk had no prior business relationship with NRWC.

18. The above referenced prerecorded phone message was sent from 855-836-5901, a phone number controlled by NRWC.

19. Pitlyk received, answered, and then listened to all or a portion of the prerecorded call on his cellular phone.

20. The prerecorded call sent to Pitlyk by NRWC invaded Pitlyk's privacy and was harassing and annoying.

21. Upon information and belief, NRWC made prerecorded calls advertising NRWC's position(s) *en masse* to the cell phones of Pitlyk and the putative class members without first obtaining their prior express written consent. Said conduct was harassing and annoying to Pitlyk and the putative class members.

**Count I -Violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.***

22. Pitlyk incorporates by reference the allegations of the previous

4

paragraphs as if fully stated in this count.

23. The TCPA states, in part:

It shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . .

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver the message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B).

47 U.S.C. § 227(b)(1).

24. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity . . . to store or produce numbers to be called, using a sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1).

25. The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. § 227(a)(4).

26. The Federal Communications Commission's regulations implementing the TCPA provide that telephone solicitations cannot be made to a recipient without the recipient's "prior express written consent." *See* FCC 12-21, CG Docket 02-278 (effective October 16, 2013); 47 C.F.R. § 64.1200(a)(2)

27. The term "prior express written consent" as defined by the Code of Federal Regulations means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to

the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)(i).

28. The TCPA provides for a private right of action and statutory damages of at least $500, and up to $1,500.00 per violation.  47 U.S.C. § 227(b)(3).

29. Pitlyk brings this action pursuant to the provisions of Missouri Supreme Court Rule 52.08 individually, and on behalf of a class defined as:

> All persons in the United States who, from August 1, 2014, to the present, received at least one prerecorded phone call on his or her cell phone from NRWC and did not provide NRWC his or her prior express written consent to receive such messages.  Excluded from this class definition are the judge, magistrate, or commissioner presiding over this matter and his or her immediate family members, counsel for named Plaintiff(s) and his/her/their immediate family members, and counsel for Defendant(s) and his/her/their immediate family members.  Excluded from this class definitions are employees, directors, and officers of NRWC.

30. Upon information and belief, NRWC used an automatic telephone dialing system to send the prerecorded phone call to the cell phones of Pitlyk and the putative class members.  NRWC's dialing system stored the phone numbers of Pitlyk and the putative class members.  The numbers were dialed without human intervention.

31. Upon information and belief, NRWC sent prerecorded phone calls to the cell phones of Pitlyk and the putative class members without first obtaining their prior express written consent.

32. By placing calls to the cell phones of Pitlyk and the putative class

6

members, without obtaining their prior express written consent, NRWC violated the express provisions of the TCPA, including, but not limited to, 47 U.S.C. § 227(b)(l).

33. NRWC knew or should have known that Pitlyk and the putative class members did not provide their prior express written consent to receive prerecorded phone calls on their cell phones.

34. Pitlyk and the putative class members are entitled to damages of $500.00 per text message made by NRWC and up to $1,500.00 per prerecorded phone call if the Court finds that NRWC willfully violated the TCPA.

35. Upon information and belief, there are hundreds and possibly thousands of persons in the proposed class, and the class is so geographically diverse that joinder of all members is impracticable.

36. Pitlyk's claims are typical of the class he seeks to represent. Pitlyk and the putative class members were called by NRWC through an automatic telephone dialing system and did not provide prior express written consent to be called on their cell phones. Pitlyk's claims and the claims and the putative class members' claims are based on the same legal theories and arise from the same unlawful conduct thereby resulting in the same injury to Pitlyk and the putative class members.

37. There are questions of law and fact common to the class. Common questions include, but are not limited to:

    a. Whether NRWC made phone calls to the cell phones of the members of the putative class members without obtaining their prior express written consent to receive said calls;

    b. Whether NRWC made phone calls to the cell phones of the putative class members using an automatic text messaging

7

        system;

c.    Whether NRWC's conduct violates 47 U.S.C. § 227(b)(l)(A);

d.    Whether NRWC's conduct violates the rules and regulations implementing the TCPA; and,

e.    Whether Pitlyk and the putative class members are entitled to increased damages based on the willfulness of NRWC's conduct.

38.    Pitlyk will fairly and adequately represent the putative class members. Pitlyk has retained counsel experienced in the prosecution of class actions. Pitlyk is committed to vigorously prosecuting the claims presented in this petition. Neither Pitlyk nor Pitlyk's counsel have any interests adverse or in conflict with the absent class members.

39.    The questions of law and fact common to the putative class members predominate over any questions of fact affecting any individual member of the proposed class.

40.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it is impracticable and economically infeasible for class members to seek redress individually.

41.    Plaintiff requests a trial by jury on all matters so triable.

## Demand for Judgment

WHEREFORE Plaintiff Samuel R. Pitlyk, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

8

a. Enter an order, pursuant to Missouri Supreme Court Rule 52.08(b)(3), certifying this action as a class action and appointing Plaintiff Samuel R. Pitlyk as representative of the class;

b. Enter an order appointing The Smith Law Firm, LLC, as counsel for the class;

c. Enter judgment in favor of Pitlyk and the putative-class for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if NRWC willfully violated the TCPA;

d. Award Pitlyk and the class all expenses of this action, and requiring defendant to pay the costs and expenses of class notice and claims administration; and,

e. Award Pitlyk and the class such further and other relief the Court deems just and appropriate.

Respectfully submitted,
THE SMITH LAW FIRM, LLC

　/s/ Neil Smith　　　　　
Neil Smith, MBN 56789
231 S. Bemiston, Suite 800
Clayton, Missouri 63105
Phone (314) 725-4400
Cellular (314) 974-3266
neil@smithlawfirm.com