# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SAMUEL R. PITLYK, individually, and on behalf of all others similarly situated,  ) ) ) ) | |
| Plaintiff,  ) ) | Case No. 4:18-cv-01507 |
| v.  ) ) ) | Hon. Ronnie L. White |
| THE NATIONAL RIGHT TO WORK COMMITTEE, a Virginia nonprofit Corporation,  ) ) ) ) | |
| Defendant.  ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FOR AN AWARD OF ATTORNEY FEES AND COSTS, AND FOR A CLASS REPRESENTATIVE INCENTIVE AWARD**

COMES NOW Plaintiff Samuel R. Pitlyk ("Pitlyk"), as class representative and pursuant to Federal Rule of Civil Procedure 23(e), and submits the memorandum in support of his Motion for Final Approval of Class Action Settlement, for an Award of Attorney Fees and Costs, and For a Class Representative Incentive Award ("Motion for Final Approval"):

**I.    Factual Background and Procedural History**

Pitlyk initiated this class action by filing a petition in the Circuit Court of St. Louis County on August 1, 2018. Defendant removed the case to this Court on September 7, 2018. Dkt. No. 1.

Pitlyk contends that Defendant The National Right to Work Committee ("NRTWC"), violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), by placing prerecorded phone calls to the cellular phones of class

members, including himself.  Dkt. No. 4.  Defendant denies that it violated the TCPA and denies that it is liable to Plaintiff and class members under the TCPA or any other theory of liability.  Dkt. No. 10.

From the inception of the case through until approximately August 5, 2019, the parties engaged in extensive formal and informal discovery.  This included written discovery propounded to both Plaintiff and Defendant, voluminous document production, and third party discovery.  The parties, through counsel engaged in a series of meet and confer telephone conferences to address various discovery disputes.

On July 3, 2019, the parties and counsel attended an all-day mediation session in St. Louis with mediator Robert D. Litz, Esq.  Dkt. Nos. 31 and 38.  While initially unsuccessful in resolving their dispute, the parties continued to mediate over the following weeks and ultimately reached a tentative settlement agreement on August 2, 2019.  Dkt. No. 40.  The parties negotiated final details of all aspects of the settlement, and Plaintiff, with NRTWC's consent, moved for preliminary approval of said settlement agreement on September 6, 2019.  Dkt. No. 46.  That motion was granted on September 6, 2019.  Dkt. No. 48.

The preliminary approval order: (1) preliminarily certified the class for settlement purposes, (2) appointed class counsel and Plaintiff as class representative for settlement purposes, (3) appointed as claims administrator KCC LLC, ("Claims Administrator"), (4) directed notice to class members in compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §1715, (5) approved the form and substance of the notices and set deadlines for claims, exclusions, and objections, and (6) scheduled a final fairness hearing for February 13, 2020, at 10:00 a.m. in Courtroom 10 South, United States

District Court for the Eastern District of Missouri, 111 South 10th Street, St. Louis, MO 63102.  *Id*.

From September 6, 2019, until the present the Claims Administrator and parties worked to provide direct notice via first class US Mail to all class members in accordance with the Court's preliminary approval order and best practices.  The claims, objections, and opt-out periods have now expired and support for the settlement remains very strong with no objections.

Plaintiff, without  opposition by Defendant, now moves for final approval of the parties' class action settlement and seeks distribution of the settlement proceeds as outlined herein.

**II.     Summary of the Settlement**

Amount of Settlement Fund and Identity of the Class

Pursuant to the terms of the Agreement, Defendant agreed to fund a non-reversionary settlement fund in the total amount of $360,000.  Dkt. No. 46, Ex. 1.  After payment of administration costs, attorney fees and litigation expenses, and an incentive payment to the class representative, the available funds will be distributed on a *pro rata* basis, in an amount up to but not to exceed a net payment of $500 per claim per call received,  to every class member who submitted a valid and timely claim.  *Id.* Individuals eligible to participate (hereinafter "Settlement Class") are:

> All persons who received at least one pre-recorded call on a cellular phone between July 1, 2018 to August 15, 2018 from The National Right to Work Committee concerning Proposition A (also known as the Missouri Right to Work Law), which appeared on the August 7, 2018 primary election ballot in the State of Missouri.

After subtracting from the common fund payment of proposed attorney fees ($120,000), a portion of litigation costs ($2,000), incentive payment ($10,000) and

3

expected costs of administration ($50,000), the total amount left to distribute among class members submitting valid and timely claims is projected to be $172.15.  These funds will be distributed *pro rata*, in an amount up to but not to exceed a net payment of $500 per claim per call received, to all class members who have submitted valid and timely claims.  The Claims Administrator is presently processing all claims to determine whether each is valid, invalid, or incomplete and subject to curing by the class member, as well as the number of calls received per valid claim.  As of February 6, 2020, a total of 1,034 valid and timely claims were submitted by class members.  Plaintiff submits in support of his Motion for Final Approval, and as Exhibit A, the declaration of Tammie Wilson of KCC LLC.

Defendant has deposited the sum of $360,000 with KCC per the terms of the Agreement.  The sums paid by Defendant into the common fund will not, under any circumstance, revert back to Defendant in the event that Final Approval is granted.  All of the funds will be distributed for the benefit of the Class.  In the event that any funds remain as a result of the $500 cap or any uncashed checks, those funds will be distributed in the form of a *cy pres* award to Beyond Housing, Inc. of St. Louis, Missouri.  Beyond Housing, Inc. is a charitable organization working to provide affordable housing in the region where class members are located and where the actions complained of occurred.  This organization is not affiliated with either party or with counsel for either party.

Notice

Defendant provided the Claims Administrator with a list of 11,943 unique telephone numbers that are or may be cellular phone numbers based on its call records (the "Phone Numbers").  Exhibit 1.

4

Between September 6, 2019, and the present the Claims Administrator and Class Counsel worked together to implement and accomplish notice to class members in compliance with the preliminary approval order. Notice was accomplished by U.S. Mail to the names and mailing addresses in Defendant's records associated with the Phone Numbers (the "Class Members"). *Id.* The Claims Administrator established a website in which Class Members could obtain more detailed information regarding the settlement. The Claims Administrator established a toll free phone number to provide more information to individuals who could not use a computer, and provided CAFA notice to Attorneys General as described in more detail in Exhibit 1.

The Claims Administrator received 1,078 timely claims forms and 1 late-filed claim form. *Id.* The Claims Administrator reviewed these timely claims and determined there to be 1,034 valid claims. *Id*. The Claims Administrator rejected 45 claims as not valid. Of these 45 rejected claims, 41 were duplicative submissions, 1 was filed after the deadline, and 3 claim forms did not contain a number that matched back to the original data. *Id*.

Additionally, only 5 individuals opted out of the settlement, and no objections were filed. *Id.* These figures demonstrate support the final approval.

<u>Attorney Fees, Costs, and Incentive Payment</u>

The settlement agreement between the parties provided for the reimbursement of Class Counsel's out-of-pocket expenses of up to $2,000, attorney's fees of one-third (1/3) of the settlement fund, or $120,000, plus an incentive payment to Plaintiff in the amount of $10,000. Dkt. No. 46, Ex. 1. Defendant does not object to requests for payments of these sums. *Id.*

### III. The Settlement Satisfies the Criteria for Final Approval

A district court may only approve a class action settlement if it is "fair, reasonable, and adequate". Fed.R.Civ.P. 23(e)(2). To make the determination, the district court considers four factors: (1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement. *Marshall v. National Football League*, 787 F.3d 502, 508 (8th Cir. 2015), citing *In re Uponor*, 716 F.3d 1057, 1063 (8th Cir. 2013).

Courts also consider the opinion of competent counsel, discovery, and the stage of proceedings, and the existence of evidence, if any, suggesting that the settlement is the product of fraud or collusion. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1417 (D. Minn. 1993)

**(1)   The Merits of Plaintiff's Case Weighed in Comparison to the Terms of the Settlement**

Among the first four factors used to determine the fairness of a class action settlement, the first (merits of the case weighed against the settlement) is "the single most important factor." *Keil v. Lopez*, 862 F.3d 685, 695 (8th Cir. 2017). Even when a case is not fully briefed a district court's decision as to the merits underlying a class action claim is entitled to deference. *Marshall*, 787 F.3d at 516. The district court is in the best position to forecast the likely outcome on the issues that would come before it. *Id.*

Here, Pitlyk and his attorney have reviewed and analyzed the legal and factual issues presented in this action. They have obtained and carefully analyzed documents and data relating to the merits of the case. This includes an analysis of matters such as

6

potential liability, extent of potential damages, likely defenses raised or expected to be raised by the Defendant, length of time needed to obtain a potential recovery, whether a damage award will be collectible, risk and expense of taking the matter to trial, and many other factors.  Exhibit 2.

Based upon careful analysis Pitlyk believes that this is a very strong case.  However, both Pitlyk and Class Counsel are acutely aware of some of the defenses that the Defendant has raised or intends to invoke.

Instead of leaving the outcome of these arguments to the discretion of the uncertainties of litigation, this settlement will provide an immediate payment of cash to each person who has submitted a valid and timely claim.  The payment of cash is not contingent on class members taking additional steps beyond submitting a valid and timely claim.  The benefit does not include any type of coupon, nor does it require or incentivize any class member to do business with Defendant in the future.  The entirety of the settlement fund will benefit the class members in that no portion will revert to the Defendant.  Dkt. No. 46, Ex. 1.

After subtracting from the settlement fund payment of proposed attorney fees ($120,000), litigation costs ($2,000), incentive payment ($10,000) and expected costs of administration ($50,000), the total amount left to distribute among class members who have submitted valid and timely claims is projected to be $178,000.  The total number of timely and valid claims will likely be 1,034, meaning that, assuming each claimant received only one call, the amount to be paid to each class member is projected to be $172.15.  While KCC's costs could slightly exceed $50,000, KCC's charge will not

7

exceed $60,000. This means that in no event will class members receive less than $162.48 each.

### (2) Defendant's Financial Condition

Where evidence suggests that a defendant is on sound financial standing, this factor will likely be considered neutral as a defendant would likely be able to pay damages but would also likely mount a spirited defense. *Marshall*, 787 F.3d. at 510.

Defendant is a Section 501(c)(4) non-profit organization. While Pitlyk believes that Defendant is on sound financial footing, the maximum recovery in this case would possibly exceed not only the financial resources available to Defendant, but also Defendant's total net assets. Pitlyk has, personally and/or through counsel, reviewed documents relating to Defendant's ability to pay damages in this matter. Defendant's financial condition is a substantial factor in Pitlyk's decision to negotiate and enter into a settlement agreement, and supports the approval of this settlement.

### (3) Complexity and Expense of Further Litigation

Class actions in general place an enormous burden of costs and expense upon the parties. *Schmidt v. Fuller Brush Co.,* 527 F.2d 532, 535 (8th Cir. 1975).

While Pitlyk remains confident that he would prevail on the merits, he recognizes that Defendant raises various defenses. These include, but are not limited to, a contention that the system used to make the calls does not fall within the definition of an "automatic telephone dialing system" as that term is used in 47 U.S.C. § 227(b)(1); that Plaintiff and Class Members consented to receiving the calls at issue; that the calls at issue were political speech and political activity protected by the First Amendment to the United States

Constitution; and that class certification, except in case of settlement, is not an appropriate means of adjudicating the matter.

Finally, because the calls at issue were made only approximately eighteen months prior to the filing of this memorandum, there is an incredible benefit to the class members to enter into a settlement agreement at the earliest possible stage of the litigation.  The number of valid addresses and phone numbers in Defendants' records  are less likely to change over the course of eighteen months than they would change over the course of three years, five years, or whatever period of time would elapse between the calls at issue and a trial on the merits (including exhaustion of any appeals prior, or subsequent, to trial on the merits).

**(4)** **The Amount of Opposition to the Settlement**

There were no objections to the settlement.  Ex. 1.

Settlements can be considered fair, reasonable, and adequate, even when substantial opposition to the settlement exists.  For example, settlements have been affirmed on appeal in cases where six out of twenty-three class representatives objected (*Marshall*, 787 F. 3d at 510), nearly half of all class members objected (*Van Horn v. Trickery*, 840 F.2d 604, 606 (8th Cir. 1988)), and all named plaintiffs objected (*Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1226-1227 (8th Cir. 1982).  Courts will frequently consider the number of objectors in analyzing the fairness of the settlement.  *Rexam, Inc. v. United Steel Workers of Am.*, No. 03-CV02998-PJS, 2007 WL 2746595 at *5 (D. Minn. Sept. 17, 2007); *see also In Re Texas Prison Litigation*, 191 F.R.D. 164, 175 (W.D. Mo. 1999) (holding that 8% of the class objecting was a relatively low level of opposition tending to indicate the fairness of the settlement).

Here, the absence of any objections to this settlement weighs heavily in favor of approval of the settlement.

**(5)     The Opinion of Counsel**

Where class counsel is qualified and well informed, class counsel's opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight. *See In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002) ("Although the Court is not bound by counsel's opinion, their opinion nevertheless is entitled to great weight.") (citing *EEOC v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1335 (E.D. Mo. 1995)).  Here, Class Counsel, with substantial experience in consumer and class action litigation, believes that the settlement is fair, reasonable, adequate, and in the best interest of the class.  Pitlyk and Class Counsel negotiated this settlement in and after a day-long mediation and believe that it provides a very favorable outcome for the Class.

**(6)     The Extent of Discovery Completed and the Stage of the Proceedings**

Courts consider the extent of discovery and the stage of the proceedings in determining whether a class settlement is fair, adequate, and reasonable.  *See In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting *Fed. Judicial Ctr., Manual for Complex Litig.* § 30.42 at 240 (3d ed. 1997)).

Pitlyk and Class Counsel completed substantial discovery that was sufficient to thoroughly evaluate potential liability, damages, ability to pay, and potential insurance coverage.

The settlement is the result of a thorough investigation and evaluation of Plaintiff's legal claims, extensive formal and informal discovery while engaging in extensive arm's-length settlement negotiations, including before an experienced third-party neutral. The fact that the settlement was achieved through negotiations by well-informed counsel and through a mediation before an experienced neutral favors approval.

### (7)  Evidence of Fraud or Collusion

No evidence of fraud or collusion is present and no class member alleges that this settlement is the result of fraud or collusion.

### (8)  The Incentive Payment to Plaintiff is Reasonable

Plaintiff requests an incentive payment in the amount of $10,000 for the work and time he has invested in acting on behalf of the Class and securing a financial recovery for the Class. This payment is reasonable in light of the effort and risk expended by Plaintiff, benefit obtained for the Class, and amounts of awards in similar cases.

See, e.g., *Benzion v. Vivint, Inc.*, No. 12-61826, Dkt. No. 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 incentive award); *Desai v. ADT Security Servs.*, Inc., No. 11-1925, Dkt. No. 243, paragraph 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 incentive award); *Sauby v. City of Fargo* No. 07-10, 2009 WL 2168942, at *3 (D.N.D. July 16, 2009) (approving $10,000 incentive award, citing *Sherrie R. Savett, et al., Consumer Class Actions: Class Certification issues, Including Ethical Considerations and Counsel Fees and Incentive Award Payments to Named Plaintiffs*, 936 PLI/Corp. 321, 340 (1996), for "listing 52 cases involving incentive award payments wherein the plaintiffs were awarded between $1,000 and $200,000).

Pitlyk's participation in this case greatly exceeded that of a typical plaintiff in a class action case.  He worked with Class Counsel over several months to develop the strategy of the case, reviewed discovery provided by the Defendant, prepared for mediation, and negotiated during an all-day in-person mediation session.  Pitlyk became actively involved in not only negotiating a basic framework of settlement, but also the nuances involved in converting the general framework into a detailed written agreement.

Pitlyk is a teacher in St. Louis County.  Time that he devoted to this case resulted in less time that he was able to devote to his profession.  Further, Pitlyk exposed himself to personal and professional scrutiny during the course of the litigation.  Yet he continued to tirelessly act on behalf of the Class.

The amount of the incentive payment is set forth in the notice to Class Members.  No Class Member objected to the proposed incentive payment.  Without his actions, these Class Members would likely be without any viable means of relief.

**(9)     The Requested Attorney Fees and Costs are Reasonable**

Class Counsel requests an attorney fee of $120,000 and reimbursement of litigation expenses of $2,000.  Ex. 2.  Plaintiffs' request amounts one-third of the settlement fund of $360,000.  The settlement fund is entirely funded and non-reversionary.  The settlement contains no coupons or other types of relief requiring complicated valuation models.

One-third or greater fee awards have been granted in many class action settlements approved by this Court.  See *Dengen v. Gerzog*, No. 15-1103, Dkt. 47, at pp. 4-5 (E.D. Mo. Apr. 20, 2016) (White, J.) (awarding 33% of the minimum amount of the settlement fund); *Prater v. Medicredit, Inc.*, No. 14-0159, 2015 WL 8331602, at *4 (E.D.

Mo. Dec. 7, 2015) (Webber, J.) (awarding a fee of 33% of the settlement fund); *Lee's v. Anthem Ins. Co.*, No. 13-1411, 2015, WL 3645208, at *4 (E.D. Mo. June 10, 2015) (Limbaugh, J.) (awarding a fee of 34% of the fund available to the class); *Heller v. HRB Tax Group*, Inc., No. 11-1121, Dkt. 60 (E.D. Mo. Aug. 9, 2013) (Adelman, J.) (awarding attorneys' fees of 33.3% of the common fund); *Lindsey Transmission v. Office Depot, Inc.*, No. 12-0221, Dkt. 100 (E.D. Mo. June 23, 2014) (Jackson, J.) (awarding attorneys' fees totaling 33% of the settlement fund).

The size of the fund created for the benefit of the class is a point of emphasis because a settlement "fund is itself the measure of success…[and] represents the benchmark from which a reasonable fee will be awarded." *Manual for Complex Litigation (Fourth Ed.)* §14.121 (2004).  Here, Class Counsel created a substantial settlement fund for the Settlement Class that is non-reversionary and ensures that the class members will be appropriately compensated.

Moreover, no class member has objected to the proposed attorney's fees.  The notice sent to all class members stated the amount of proposed attorney fees and costs, and no class member filed an objection.  The lack of objections "strong evidence of the propriety and acceptability" of the fee request.  *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (E.D. Fla. 1992).

**Conclusion**

The terms of the proposed Agreement as outlined herein are fair, reasonable, and adequate.  The expected benefit to each class member is substantial, and the requirements of Rules 23(a) and (b) are satisfied.  Relief requested in Plaintiff's Motion for Final Approval is in the best interest of the Class and will benefit the Class.  The response from

13

Class Members has been overwhelmingly positive and supports approval of the settlement.

The parties engaged in extensive arm's length negotiations and mediation with an able and experienced mediator after engaging in expedited and informal discovery. There is no suggestion that the settlement is the product of fraud or collusion. The benefits to Class Members are substantial. The settlement avoids the substantial risks and delay inherent in further litigation through an uncertain trial on the merits and the resulting appeals.

The terms of this settlement provide these benefits promptly, allowing Plaintiff and the class to avoid the delay, risk, and expense of continued litigation. For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the proposed class settlement and retain jurisdiction over the enforcement and implementation of the settlement.

Respectfully submitted,
THE SMITH LAW FIRM, LLC

  /s/ Neil Smith
Neil Smith, #56789MO
231 S. Bemiston Ave., Suite 800
Clayton, MO 63105
Phone: (314) 725-4400
Cellular: (314) 974-3266
neil@smithlawfirm.com
*Attorney for Plaintiff and Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 6th day of February, 2020, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, Eastern Division, using the CM/ECF system, which will send notification of such filing to all counsel of record.

  /s/ Neil Smith